UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DAVID B. C.,

                                        Plaintiff,

v.                                                          1:20-CV-01136
                                                            (FJS/TWD)

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.
_____

APPEARANCES:                            OF COUNSEL:

DRAKE LOEB PLLC                         GARY J. GOGERTY, ESQ.
 *Attorney for Plaintiff*
555 Hudson Valley Avenue, Suite 100
New Windsor, New York 12553

U.S. SOCIAL SECURITY ADMIN.             LISA G. SMOLLER, ESQ.
 *Counsel for Defendant*                Special Assistant United States Attorney
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, Massachusetts 02203

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## REPORT-RECOMMENDATION AND ORDER

        This matter was referred for a Report-Recommendation by the Honorable Frederick J.

Scullin, Jr., Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Northern

District of New York Local Rule 72.3.  David B. C. ("Plaintiff") brings this action pursuant to 42

U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social

Security ("Defendant" or "Commissioner"), denying his Title XVI application for Supplemental

Security Income ("SSI").  (Dkt. No. 1.)  This case has proceeded in accordance with General

Order 18 of this Court.  Pending before the Court are the parties' cross-motions for judgment on

the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  (Dkt. Nos. 15, 17.)

Oral argument was not heard.  For the reasons discussed below, the Court recommends affirming

the Commissioner's decision and dismissing Plaintiff's complaint.

## I.    BACKGROUND

Plaintiff was born on July 27, 1967.  (Administrative Transcript[1] at 217.)  He completed

the eleventh grade and subsequently obtained a GED.  *Id*.  He last worked in the 1990s as a

construction laborer.  (T. 31, 57, 208.)  On April 12, 2017, Plaintiff filed an application for SSI

alleging disability beginning April 1, 2017.  (T. 217.)  Plaintiff alleges disability due to

degenerative disc disease in the lumbar and thoracic spine, degenerative joint disease,

depression, anxiety, social phobia, hypertension, alcohol dependency, and chronic obstructive

pulmonary disease ("COPD").  (T. 207.)

Plaintiff's application was initially denied on January 22, 2018.  (T. 97.)  At Plaintiff's

request, Administrative Law Judge ("ALJ") Laura Michalec Olszewski conducted a hearing on

February 28, 2019.  (T. 43-86.)  The ALJ heard the testimony of Plaintiff, represented by

counsel, and the testimony of vocational expert ("VE") David Vandergoot.  *Id*.  At the hearing,

Plaintiff testified seeing his three children, ages 27, 24, and 19, "all the time."  (T. 53, 63.)

Plaintiff lives on the ground floor of a shared house.  (T. 53-54.)  He uses social media, hosts a

weekly Bible study, watches some television, and plays computer scrabble against a friend.  (T.

---

[1]  The Administrative Transcript is found at Dkt. No. 14.  Citations to the Administrative
Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein
will be used rather than the page numbers the Court's CM/ECF electronic filing system assigns.
Citations not made to the Administrative Transcript will use the page numbers assigned by the
Court's CM/ECF electronic filing system.

58-59, 62.)  Plaintiff prepares his meals, cleans his room, and does his own laundry.  (T. 58-60, 65.)  He attends AA meeting twice a week and uses public transportation.  (T. 55, 61.)

On May 30, 2019, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act.  (T. 11-23.)  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on July 23, 2020. (T. 1-5.)  Plaintiff timely commenced this action on September 20, 2020, challenging the Commissioner's decision.  (Dkt. No. 1.)

## II.     RELEVANT LEGAL STANDARDS

### A.     Standard of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted).  A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision.  42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  "Substantial evidence" is evidence amounting to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation marks and citation omitted).  Where evidence is deemed susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

3

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's findings must be sustained "even where substantial evidence may support the plaintiff's positions and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  A reviewing court cannot substitute its interpretation of the administrative record in place of the Commissioner's if the record contains substantial support for the ALJ's decision. *Rutherford*, 685 F.2d at 62.

**B.     Standard for Benefits**[2]

To be considered disabled, a plaintiff seeking disability benefits must establish he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

---

[2]  While the SSI program has special economic eligibility requirements, the requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, so "decisions under these sections are cited interchangeably." *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

42 U.S.C. § 1382c(a)(3)(B).

The Social Security Administration regulations outline a five-step process to determine whether a claimant is disabled:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008); 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v)).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

The claimant bears the burden of proof regarding the first four steps. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)).  If the claimant meets his or her burden of proof, the burden shifts to the Commissioner at the fifth step to prove the claimant is capable of working. *Id*.

## III.    THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims.  (T. 11-23.)  At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the application date.  (T. 13.)  Proceeding to step two, the ALJ determined Plaintiff had the following severe impairments: degenerative joint disease, degenerative disc disease, depression, anxiety disorder, COPD, osteoarthritis, bursitis of

5

knee, alcohol abuse disorder, and obesity.  *Id*.  At step three of the sequential evaluation, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment.  (T. 14-16.)

Thereafter, the ALJ determined Plaintiff had the residual functional capacity ("RFC") to perform a range of light work as defined in 20 C.F.R. § 416.967(b).  (T. 16.)  Specifically, he found Plaintiff:

> can lift and or carry 20 pounds occasionally and 10 pounds frequently.  He can sit for six hours in an eight-hour workday, stand and or walk for six hours in an eight-hour workday.  He can occasionally climb ramps and stairs but should never climb ladders and scaffolds.  He can occasionally balance and stoop, but should never kneel, crouch and crawl.  The claimant should work in a low stress environment defined as occasional use of judgment, occasional decision-making, and occasional changes in work setting.  [H]e can perform simple and routine task[s] and can have occasional exposure to respiratory irritants such as dust, odors, fumes and gases and extreme hot and cold temperatures.  The claimant needs a cane to ambulate.

*Id*.

In making the RFC determination, the ALJ considered all of Plaintiff's symptoms, and the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. [§] 416.929 and [Social Security Ruling] 16-3p."  *Id*.  The ALJ further stated that she considered opinion evidence and prior administrative medical findings pursuant to 20 C.F.R. § 416.920(c).  *Id*.  The ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record.  (T. 19.)

6

Proceeding to step four of the sequential evaluation, the ALJ determined Plaintiff has no past relevant work.  (T. 20.)  At step five, the ALJ evaluated the VE testimony and in considering Plaintiff's age, education, work experience, and RFC, found Plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy" such as routing clerk, photocopy machine operator, and production assembler.  (T. 21.) Accordingly, the ALJ determined Plaintiff was not disabled, as defined in the Social Security Act, from the alleged onset date through the date of her decision.  *Id.*

**IV.    DISCUSSION**

Plaintiff contends the Commissioner's decision is tainted by legal error and is not supported by substantial evidence.  (Dkt. No. 15.)  Specifically, Plaintiff claims: (1) the ALJ failed to develop the record; (2) the RFC is not supported by substantial evidence; and (3) the VE's testimony is not supported by substantial evidence.  *Id.* at 12-20.  Defendant counters the ALJ applied the correct legal standards and substantial evidence supports her decision.  (Dkt. No. 17 at 3-7.)

**A.    Medical Opinion Evidence**

The ALJ considered the medical opinions of the consultative examiner and state agency reviewing physicians.  (T. 16-20.)  There was no medical source statement submitted by any of Plaintiff's treating sources.  A summary of the opinion evidence and the ALJ's findings are set forth below.

**1.    Consultative Examiner Jay Dinovitser, D.O.**

Dr. Dinovitser performed a consultative examination of Plaintiff on December 12, 2017. (T. 979-83.)  Plaintiff reported a history of osteoarthritis in both knees, thoracic spine pain, low back pain, COPD, hypertension, alcohol dependence, anxiety, social phobia, and major

7

depression.  (T. 979-80.)  He also reported undergoing open reduction and internal fixation

("ORIF") surgery in June 2017, following a fall that fractured his right tibia and fibula.  (T. 979.)

Plaintiff stated he could sit for three hours, stand for forty-five minutes, and walk for ten

minutes.  *Id*.  He described having shortness of breath after climbing a flight of stairs and with

activities like cooking, cleaning, and shopping.  *Id*.  He reported drinking four bottles of beer

three times per week, smoking five cigarettes per day, and using marijuana.  (T. 980.)  Plaintiff

used a microwave four times per week, cleaned once per week, did laundry once per week,

shopped twice per week in short trips, and cared for his personal needs daily.  *Id*.

During the examination, Plaintiff demonstrated a normal gait and stance.  *Id*.  He had the

ability to walk on heels and toes on the left, but not on the right.  *Id*.  He could squat to 2/3.  *Id*.

He used no assistive devices and did not require any assistance changing for the examination,

getting on and off the examination table, or rising from a chair.  *Id*.  Dr. Dinovitser found full

flexion, extension, and lateral flexion bilaterally, and full rotary movement bilaterally in the

cervical spine.  *Id*.  Mild tenderness of the thoracic spine was noted.  (T. 981-82.)  Plaintiff had

some decreased range of motion of the lumbar spine with mild tenderness.  (T. 982.)

Plaintiff showed full range of motion of his shoulders, elbows, forearms, wrists, and

ankles bilaterally.  *Id*.  His joints were stable and nontender except for severe tenderness in his

right ankle.  *Id*.  On examination, Plaintiff had 5/5 strength in his upper extremities, 5/5 strength

in his left lower extremity, and 4/5 strength in his lower right extremity.  *Id*.  Dr. Dinovitser

found intact hand and finger dexterity, as well as full grip strength bilaterally.  *Id*.  Pulmonary

function studies showed a mild obstruction with normal findings post-bronchodilator.  *Id*.

Based on his examination, Dr. Dinovitser opined:

> There are no limitations with the use of the hands.  There are no
> limitations in seeing, hearing, and speaking.  There are moderate
> limitations in pushing, pulling, and bending.  There are moderate
> limitations in lifting and carrying.  There are no limitations in
> sitting.  There are mild limitations in standing.  There are moderate
> limitations in walking.  There are moderate limitations with stairs
> and other climbing.

(T. 983.)

The ALJ found Dr. Dinovitser's opinion that Plaintiff had overall mild to moderate exertional and postural restrictions to be persuasive because it was well supported by objective findings, including normal gait and station, full range of motion of the joints, and 4-5/5 strength in the upper and lower extremities, and was consistent with the medical evidence of record, including Plaintiff's conservative treatment history, successful ORIF surgery, the repeated normal physical examinations, and the opinion of Dr. Seok.  (T. 20.)

## 2.     State Agency Consultant I. Seok, M.D.

Dr. Seok, a state agency medical consultant, reviewed Plaintiff's then current medical records and issued an assessment on December 28, 2017.  (T. 94-96.)  At the time, the record consisted of Dr. Dinovitser's consultative examination report and medical records from Step One dated 2015 and 2016, Hudson Valley Mental Health ("HVMH") dated 2015 to 2017, Orthopedics and Sports Medicine dated 2016 and 2017, Wingate Healthcare dated June 2017, and Greater Hudson Valley and Cornerstone Family Health dated 2016 and 2017.  (T. 87-92.)

Based upon that review, Dr. Seok determined Plaintiff had the ability to perform a range of light work with postural limitations.  (T. 96.)  Specifically, Dr. Seok opined Plaintiff could occasionally lift and/or carry up to twenty pounds and could frequently lift and/or carry up to ten pounds.  (T. 94.)  In Dr. Seok's opinion, Plaintiff could stand and/or walk for a total of about six hours during an eight-hour workday, and could sit for a total of six hours during an eight-hour

workday.  *Id*.  Dr. Seok also opined Plaintiff had no limitations regarding pushing or pulling (other than the forementioned lifting and carrying limitations).  *Id*.  As to postural limitations, Dr. Seok opined Plaintiff could occasionally climb ladders, ropes, and scaffolds, occasionally stoop, occasionally couch, and had unlimited balancing, kneeling, and crawling limitations.  (T. 94-95.)

The ALJ found Dr. Seok's opinion persuasive because it was supported by and consistent with the conservative nature of Plaintiff's treatment, minimal clinical findings, and range of daily activities.  (T. 18, 20.)

### 3.     Stage Agency Consultant M. Tatar, Ph.D.

Dr. Tatar, a state agency psychiatric consultant, reviewed Plaintiff's then-current medical record on November 17, 2017.  (T. 87-93.)  Upon review, Dr. Tatar noted Plaintiff's history of depression, social phobia, and anxiety.  (T. 93.)  Dr. Tatar opined Plaintiff had no severe psychiatric impairments and no more than mild mental limitations.  (T. 92-93.)  Dr. Tatar noted Plaintiff's treatment notes indicated "normal MSE, lack of symptoms.  ADL self-report not limited by psychiatric symptoms."  (T. 93.)

The ALJ found Dr. Tatar's opinion not persuasive because it was not consistent with Plaintiff's mental health treatment history and Dr. Tatar did not have the benefit of later evidence submitted into the record.  (T. 20.)

### B.     Duty to Develop the Record

As a threshold hold issue, Plaintiff argues the ALJ failed to comply with her legal duty to develop the record.  (Dkt. No. 15 at 12-14.)  To that end, Plaintiff claims the ALJ failed to obtain a functional assessment of his abilities from any treating physician as required under the regulations and, therefore, remand is required.  *Id*.  In response, the Commissioner argues the

ALJ satisfied her duty to develop the record because there were no gaps in the medical record and Plaintiff, represented by counsel, affirmatively stated the record was complete during the administrative hearing.  (Dkt. No. 17 at 3-4.)

Considering the non-adversarial nature of the administrative proceedings, an ALJ has a duty to develop the record, regardless of whether the claimant is represented by counsel.  *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *see also Dutcher v. Astrue*, No. 09-CV-1161 (LEK/VEB), 2011 WL 1097860, at *5 (N.D.N.Y. Mar. 7, 2011) (citing *Pratts v. Chater*, 94 F.3d at 37); *Guile v. Barnhart*, No. 5:07-cv-259, 2010 WL 2516586, at *3 (N.D.N.Y. June 14, 2010). Thus, when the evidence of record is inadequate to determine whether a claimant is disabled, "the ALJ has an obligation to seek additional information to supplement the record."  *Mantanani v. Astrue*, No. 09-CV-3957, 2011 WL 1304148, at *3 (E.D.N.Y. Mar. 31, 2011).  However, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim."  *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (internal citation omitted); *see, e.g.*, *Camellia O. v. Comm'r of Soc. Sec.*, No. 1:19-CV-1153 (DJS), 2021 WL 354099, at *5 (N.D.N.Y. Feb. 2, 2021) ("[T]he ALJ's duty to develop the record is not unlimited and is discharged when the ALJ 'possesses [the claimant's] complete medical history' and there are no 'obvious gaps or inconsistencies' in the record.").

"Whether the ALJ has met [her] duty to develop the record is a threshold question." *Matthew D. v. Comm'r of Soc. Sec.*, No. 5:20-CV-793 (TJM), 2021 WL 1439669, at *6 (N.D.N.Y. Apr. 16, 2021) (citations omitted).  "Thus, "[e]ven before reviewing the record to determine whether the substantial evidence supported the ALJ's decision, the court must first be satisfied that the ALJ provided the plaintiff with 'a full hearing under the Secretary's regulations'

11

and also fully and completely developed the administrative record." *Id*. (citations omitted). "Remand is appropriate where this duty is not discharged." *Id*. (citing *Moran*, 569 F.3d 108, 114-15 (2d Cir. 2009) (other citations omitted).

"Generally, an ALJ should seek additional evidence or clarification when there is a conflict or ambiguity that must be resolved, when the medical reports lack necessary information, or when the reports are not based on medically acceptable clinical and laboratory diagnostic techniques." *Dale A. M. v. Comm'r of Soc. Sec.*, No. 5:19-CV-1150 (FJS), 2021 WL 1175160, at *11 (N.D.N.Y. Mar. 29, 2021) (quotation marks and citations omitted). Thus, the ALJ is not required to further develop the record where all evidence of record is consistent and sufficient, such that the ALJ can make his determination without additional evidence. *Id*. (citing *Hernandez v. Comm'r of Soc. Sec.*, No. 1:13-CV-959 (GLS/ESH), 2015 WL 275819, at *2 (N.D.N.Y. Jan. 22, 2015) (citing 20 C.F.R. § 404.1520b(a))); *see also William M. v. Comm'r of Soc. Sec.*, No. 3:20-CV-635 (FJS), 2021 WL 4123478, at *7 (N.D.N.Y. Sept. 9, 2021) (same).

Moreover, "[a]n ALJ has taken reasonable steps to complete the medical record when she asks claimant's attorney at a hearing if the medical records before her are complete, and the attorney answers affirmatively." *James C. v. Comm'r of Soc. Sec.*, No. 5:19-CV-1206 (TWD), 2020 WL 6445907, at *9 (N.D.N.Y. Nov. 3, 2020) (citing *Orts v. Astrue*, No. 5:11-CV-0512 LEK/ESH, 2013 WL 85071, at *3 (N.D.N.Y. Jan. 7, 2013)); *see Streeter v. Comm'r of Soc. Sec*., No. 5:07-CV-858 (FJS), 2011 WL 1576959, at *4 (N.D.N.Y. Apr. 26, 2011) (finding the ALJ had satisfied her duty to develop the record when "the ALJ specifically asked Plaintiff's counsel, during the hearing, if the medical records were complete, to which Plaintiff's counsel responded affirmatively").

In the case at bar, although there is no medical source statement opinion from any of Plaintiff's treating sources, the Court finds the ALJ was not required to develop the record further because the evidence of record was sufficient for her to render a decision and contained no obvious gaps. *See* Part IV.C., *infra*. Additionally, Plaintiff did not object to the contents of the record or identify any gaps that need to be filled. (*See* T. 85.) In fact, Plaintiff's counsel affirmatively stated the record was complete. *Id*.[3] *See Jordan v. Comm'r of Soc. Sec.*, 142 F. App'x 542, 543 (2d Cir. 2005) (finding that the ALJ fulfilled his duty to develop the record where counsel represented that he had "nothing further to add," and he did not request the ALJ's help in obtaining the documents).

Contrary to Plaintiff's assertion, the lack of a medical source statement from a treating source does not render the record incomplete, provided that the ALJ made her determination based on "sufficient" and "consistent evidence." *Streeter*, 2011 WL 1576959, *4 (citations omitted); *see also Dale A. M.*, 2021 WL 1175160, at *24. Most basically, an ALJ need not further develop the record "when the evidence already presented is 'adequate for [the ALJ] to make a determination as to disability.'" *Janes v. Berryhill*, 710 F. App'x 33, 34 (2d Cir. 2018) (summary order) (quoting *Perez*, 77 F.3d at 48).

Nevertheless, Plaintiff contends the ALJ still had an obligation to contact his treating sources to supply an opinion on Plaintiff's functional limitations, beyond what was found in the extensive treatment notes. (Dkt. No. 15 at 12-14.) The Court disagrees. *See Swiantek v. Comm'r of Soc. Sec.*, 588 F. App'x 82, 84 (2d Cir. 2015) (summary order) (although an ALJ has

---

[3] At the conclusion of the hearing, the ALJ asked, "All right, so, Mr. Gogerty, the record is complete, correct?" (T. 85.) Plaintiff's attorney responded, "To the best of my knowledge, it is, Your Honor, other than ongoing treatment." *Id*.

a duty to develop the record, where there are no obvious gaps and the ALJ possesses a complete

medical history, he is under no obligation to seek a treating-source opinion (citations omitted));

*see also Rodriguez v. Colvin*, No. 14-CV-1129 (GLS), 2016 WL 447715, at *7 (N.D.N.Y. Feb. 4,

2016) (where ALJ had plaintiff's treatment records, as well as consultative medical opinions

detailing the functional limitations caused by such impairments, ALJ was under no duty to seek a

medical source statement from a treating provider before making his determination); *see Tankisi*

*v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013) (remand not required to obtain a

treating source opinion where the record contained sufficient evidence from which the ALJ could

assess plaintiff's RFC).

      The Court also finds Plaintiff's reliance on cases applying the "treating physician rule" to

be misplaced.  (Dkt. No. 15 at 12-14.[4])  Under the new regulations, applicable here, ALJs do not

defer to, or give specific evidentiary weight to, any medical opinions.  20 C.F.R. §§

404.1520c(a), 416.920c(a).  Thus, "the ALJ is no longer required to recontact the treating source

in order to properly develop the record[.]"  *Bradley W. v. Comm'r of Soc. Sec.*, No. 19-1217

(ATB), 2020 WL 5848833, at *13 (N.D.N.Y. Oct. 1, 2020); *Brian Z. v. Comm'r of Soc. Sec.*, No.

5:20-CV-737 (ATB), 2021 WL 3552525, at *9 (N.D.N.Y. Aug. 11, 2021) ("Because the ALJ

adequately explained her reliance on the medical records and plaintiff's testimony as well as the

---

[4]  For example, Plaintiff asserts "the ALJ must obtain the treating physician's opinion regarding the claimant's alleged disability; raw data or even complete medical records are insufficient by themselves to fulfill the ALJ's duty . . . It is the opinion of the treating physician that is to be sought; it is his opinion as to the existence and severity of a disability that is to be given deference."  (Dkt. No. 15 at 13 (alteration in original) (quoting *Barrie on behalf of F.T. v. Berryhill*, No. 16-CIV-5150, 2017 WL 2560013, at *10 (S.D.N.Y. June 12, 2017) (quoting *Olivera's ex rel. Gonzalez v. Astrue*, No. 07 CIV. 284, 2008 WL 2262618, at *6 (S.D.N.Y. May 30, 2008))).)

14

persuasiveness of the medical opinion evidence, she provided substantial evidence for her RFC determination, and there was no requirement that she further develop the record [by contacting treating sources for a medical source statement].").  In any event, even under the older regulations, "there is no obligation to re-contact a treating physician where the evidence of record is 'adequate to permit the ALJ to make a disability determination.'"  *Benjalee W. v. Saul*, No. 18-1261 (TWD), 2020 WL 1029023, at *5 (N.D.N.Y. Mar. 3, 2020).

Here, the record contained Plaintiff's testimony, opinions from examining and reviewing consultative sources, and extensive treatment records from Plaintiff's providers.  (*See generally* Parts I, IV.A., C.)  Additionally, Plaintiff's counsel affirmatively stated the record was complete. (T. 85.)  Therefore, the Court finds the ALJ did not fail to develop a proper record.

For the foregoing reasons, the Court finds the ALJ fulfilled her duty to develop the record and remand is not warranted.  As such, the Court recommends denying Plaintiff's motion on this ground.

### C.    RFC Determination

Plaintiff argues the ALJ's RFC determination was the product of the ALJ's lay judgment and not supported by substantial evidence.  (Dkt. No. 13 at 13-18.)  The Court disagrees.

The RFC is an assessment of "the most [Plaintiff] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The ALJ is responsible for assessing Plaintiff's RFC based on a review of relevant medical and non-medical evidence, including any statement about what Plaintiff can still do, provided by any medical sources.  *Id.* §§ 404.1527(d), 404.1545(a)(3), 404.1546(c); 416.927(d), 416.945(a)(3), 416.946(c).  Thus, the ALJ is tasked with the responsibility of reviewing all the evidence, resolving inconsistencies, and making a determination that is consistent with the evidence as a whole.  *Camarata v. Colvin*, No. 6:14-CV-

0578 (MAD), 2015 WL 4598811, at *9 (N.D.N.Y. July 29, 2015).  Although the ALJ has the responsibility to determine the RFC based on all the evidence in the record, the burden is on Plaintiff to demonstrate functional limitations that preclude any substantial gainful activity.  *Id*. §§ 404.1512(c), 404.1527(e)(2), 404.1545(a), 404.1546(c), 416.912(c), 416.927(e)(2), 416.945(a), 416.946(c).

As discussed, under the new regulations, applicable here, "the Commissioner will no longer give any specific evidentiary weight to medical opinions." *Raymond M. v. Comm'r of Soc. Sec.*, 5:19-CV- 1313, 2021 WL 706645, at *4 (N.D.N.Y. Feb. 22, 2021) (citations omitted). Rather, the Commissioner will consider all medical opinions and "evaluate their persuasiveness" based on their "supportability; consistency; relationship with the claimant; specialization; and 'other factors.'" *Id*. (citing 20 C.F.R. §§ 404.1520c(c)(1)-(5); 416.920c(c)(1)-(5)). "Supportability and consistency are the most important factors" in determining whether a medical opinion is persuasive.  20 C.F.R. § 416.920c(b)(2).

While "the new regulations eliminate the perceived hierarchy of medical sources [and] deference to specific medical opinions . . . the ALJ must still 'articulate how [she] considered the medical opinions' and 'how persuasive [she] finds all of the medical opinions.'" *Brian O. v. Comm'r of Soc. Sec.*, 1:19-CV-983, 2020 WL 3077009 at *4 (N.D.N.Y. June 10, 2020) (quoting 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b)).  An ALJ is explicitly required to "explain how [she] considered the supportability and consistency factors."  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  Additionally, the ALJ "must consider, but need not explicitly discuss, the [other] three factors." *Brian O.*, 2020 WL 3011009, at *5 (citing 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2)).

In general, the ALJ is obligated to formulate Plaintiff's RFC based on the record as a whole, not just upon the medical opinions alone. *Trepanier v. Comm'r of Soc. Sec. Admin.*, 752 F. App'x 75, 79 (2d Cir. 2018). Further, substantial evidence is evidence that "a reasonable mind might accept as adequate to support" a conclusion. *Biestek v. Berryhill*, 139 S. Ct. 1145, 1154 (2009).

Here, the ALJ determined Plaintiff had the RFC to perform a range of light work. (T. 16-20.) As noted, in formulating Plaintiff's RFC, the ALJ relied, in part, on the medical opinion evidence in the record and found that the opinions of Drs. Dinovitser and Seok to be persuasive as they were supported by and consistent with the conservative treatment history, minimal clinical findings, and full range of daily activities. (T. 16-20.) Additionally, the ALJ discussed the medical records and treatment notes submitted from Plaintiff's providers. *See id*.

As detailed in Plaintiff's brief and the ALJ's decision, Plaintiff treated at HVMH from April 16, 2015, through January 6, 2017. (T. 411-65, 487-510.) Plaintiff was generally treated for anxiety, depression, and substance abuse and cocaine dependence in remission. Mental status examinations in April 2015 and February, April, June, and October 2016, showed an appropriate affect, good eye contact, good attention and concentration, fair judgment, logical speech, and normal memory. (T. 417, 436, 450, 461.) He was prescribed medication and therapy. In March 2016, he reported that he was attending AA meetings, walking at the mall on a regular basis, and getting along better with his children's mother. (T. 440.) In August 2016, he reported attending AA meetings, attending the "job shop" and trying to send out resumes and applications. (T. 457.) In October 2016, Plaintiff reported being depressed and anxious and stressed with the job search. (T. 460.)

17

Records from Cornerstone Family Healthcare from 2016 through 2017, show Plaintiff was followed for hypertension, COPD, obesity, alcohol abuse, bipolar disorder, depression, and anxiety. (T. 17, 587-97, 604-10, 618-23.)  Physical and metal examinations were generally normal. (T. 520, 529, 545-55, 560, 580, 587, 593, 602, 620.)  He was prescribed medications and therapy and was encouraged to lose weight and stop smoking.

Plaintiff presented to Dr. Barry Hyman at Orthopedics and Sports Medicine on December 5, 2016, with complaints of bilateral knee pain and low back pain. (T. 17, 474-85.)  X-rays revealed unilateral primary osteoarthritis of the left and right knees and meniscus derangement of the left knee. (T. 485.)  An x-ray of the lumbar spine showed diffuse degenerative changes and moderate narrowing of disc space at L5-S1.  *Id*.  Plaintiff proceeded with conservative treatment of physical therapy and a home exercise program for six weeks. (T. 474-76.)

In January 2017, Plaintiff reported physical therapy had been helpful and his symptoms had improved, although he had increased back pain with prolonged walking and sitting. (T. 470.)  He followed up with Dr. Hyman in March 2017 and noted physical therapy had been helpful. (T. 468-73.)

Plaintiff was admitted to Wingate Healthcare in June 2017 after a fall, injuring his right left leg. (T. 821-52.)  Plaintiff was diagnosed with a fracture of the distal part of the right tibia and fibula and underwent ORIF surgery on June 20, 2017, performed by Dr. Jeremy Mangion. (T. 833-35.).  He was discharged one week later.  Plaintiff sustained two falls while rehabbing and presented to the emergency room on July 7 and August 12, 2017.  At each encounter, he was found to have no further damage and was discharged in stable condition. (T. 850-69.)  Dr. Mangion's progress note of October 11, 2018, indicated Plaintiff "will continue weightbearing as tolerated" and "will continue a home exercise program for strengthening." (T. 892-94.)

18

In October 2017, Plaintiff presented to the emergency room at St. Luke's Cornwall Hospital ("SLCH") with low blood pressure and dizziness. (T. 1240-1357.) His physical examination, chest x-ray, and CT scan were normal. (T. 1245.) He was discharged the same day. *Id*.

Records submitted from Horizon Family Medical Center from 2017 and 2018 show that Plaintiff was treated for obstructive sleep apnea, hypertension, and COPD. (T. 1033-41.) He was prescribed medications and advised to cease smoking.

Plaintiff presented to Dr. Thomas Reed, a pulmonologist, on January 23, 2018 for COPD, shortness of breath, and sleep disorder breathing. (T. 1038-40.) A pulmonary function test on January 31, 2018, indicated asthma and chronic bronchitis. (T. 1046-47.)

On May 8, 2018, Plaintiff presented to the emergency department at SLCH with chest pain, associated shortness of breath, and dizziness. (T. 1258-97.) He had stable vital signs. Cardiology was consulted for further evaluation and management. On discharge it was noted that troponin remained normal, cardiac monitoring showed no arrhythmias, and EKG within normal limits. (T. 1280.) He was prescribed nitroglycerin as needed as part of his home medication regimen. *Id*.

Plaintiff returned to SLCH on May 29, 2018, for chest pain with associated shortness of breath and dizziness. (T. 1298-1312.) He reported drinking. He was stabilized and discharged. An echocardiogram from May 2018 showed normal left ventricular chamber size, mild LVH, and ejection fraction more than 55%. (T. 1358-83.) Plaintiff was evaluated at Putnam Hospital Center on August 26, 2018, for complaints of chest pain and he was discharged the same day. (T. 992-1027.)

Plaintiff followed up with Dr. Reed on September 24, 2018, for re-evaluation of sleep disorder breathing.  Dr. Reed noted Plaintiff's symptoms were consistent with sleep disordered breathing and referred Plaintiff for a sleep study.  Dr. Reed noted Plaintiff was clinically stable with his COPD.  (T. 1033-34.)

In October 2018, Plaintiff was taken to the emergency room at SLCH due to episodes of syncope associated with coughing.  Testing revealed no acute disease.  He was discharged in stable condition.  (T. 1313-34.)

Records from WMC Advanced Physician Services from 2018 showed Plaintiff was treated for bursitis of the right knee and was prescribed medications and therapy.  (T. 19, 1427-42.)  In October 2018, Plaintiff showed decrease range of motion with full 5/5 strength with intact neurological findings.  (T. 19, 1429-30.)  An x-ray of the knee showed advance left knee osteoarthritis.  (T. 1461.)

Records from Hudson Valley Cardiology dated November 2018, show Plaintiff was treated for hypertension and chest pain.  (T. 1358.)  Plaintiff reported that he had been drinking daily.  He denied shortness of breath, dizziness, or leg swelling.

In January 2019, Plaintiff denied depressed mood and reported he was compliant with medications.  (T. 18, 1415-21.)  He also received a CPAP machine, which had improved his sleep.  (T. 1415-21.)

Considering the foregoing, the record contained sufficient evidence from which the ALJ could assess Plaintiff's RFC.  As such, the Court finds Plaintiff's argument that the ALJ could not have rendered an RFC determination based on the evidence is unpersuasive.  (Dkt. No. 15 at 14-18.)  The RFC finding is an administrative finding, not medical, and its determination is within the province of the ALJ.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *Curry v. Comm'r*

*of Soc. Sec.*, 855 F. Apex 46, 48 n.3 (2d Cir. 2021).  Overall, the ALJ properly assessed

Plaintiff's RFC based on the record as a whole.  (T. 16-20.)

Additionally, an ALJ's RFC determination is not fatally flawed merely because it was

formulated absent a medical opinion.  As stated in the regulations, an RFC finding is

administrative in nature, not medical, and its determination is within the province of the ALJ.  20

C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  It is the responsibility of the ALJ to determine

Plaintiff's RFC based on all the evidence in the record including, but not limited to, statements

provided by medical sources.  *Id*. §§ 404.1527(d), 404.1545(a)(3), 404.1546(c), 416.927(d),

416.945(a)(3), 416.946(c).  The Second Circuit has held that where, "the record contains

sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a

medical source statement or formal medical opinion is not necessarily required."  *Monroe v.

Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal quotations and citation omitted);

*see Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may

not perfectly correspond with any of the opinions of medical sources cited in his decision, he was

entitled to weigh all of the evidence available to make an RFC finding that was consistent with

the record as a whole.").  Therefore, Plaintiff's assertion that the ALJ's RFC determination was

the product of legal error is without merit.

Moreover, although Plaintiff contends that there were *no* medical opinions in the record,

(Dkt. No. 15 at 17-18), as set forth above, the ALJ properly considered the opinion of Drs.

Denoiser, Seok, and Tartar and substantial evidence supports her conclusions regarding the

persuasiveness of each opinion.  (T. 16-20.)  Contrary to Plaintiff's assertion, when assessing a

claimant's RFC, an ALJ is entitled to rely on opinions from both examining and non-examining

State agency medical consultants because these consultants are qualified experts in the field of

Social Security disability. *See Frey ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); *Little v. Colvin*, No. 5:14-CV-0063 (MAD), 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (internal quotation marks and citations omitted); *see also Reed v. Comm'r of Soc. Sec.*, No. 5:16-CV-1134, 2018 WL 1183382, at *5 (N.D.N.Y. Mar. 6, 2018) ("It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability."); *Barber v. Comm'r of Soc. Sec.*, No. 6:15-CV-0338 (GTS/WBC), 2016 WL 4411337, at *7 (N.D.N.Y. July 22, 2016) (citations omitted) ("It is well established that an ALJ may rely on the medical opinions provided by State agency consultants and that those opinion[s] may constitute substantial evidence.").

In general, a consultative examiner's opinion may constitute substantial evidence to support a determination if otherwise supported by the record. *Grega v. Saul*, 816 F. App'x 580, 582-583 (2d Cir. 2020). Further, terms such as mild and moderate are not impermissibly vague, particularly where conclusions are well supported by an extensive examination or rendered more concrete by other facts and evidence in the record. *Tammy C. J. v. Comm'r of Soc. Sec.*, 523 F. Supp. 3d 368, 377 (W.D.N.Y. 2021) (internal citations omitted).

Plaintiff also argues the only medical opinions of record were rendered in November and December of 2017, and, therefore, cannot constitute substantial evidence for the ALJ's RFC. (Dkt. No. 15 at 16-17.) Again, the Court disagrees.

To be sure, "medical source opinions that are conclusory, stale, and based on an incomplete medical record may not be substantial evidence to support an ALJ finding." *Camille v. Colvin*, 104 F. Supp. 3d 329, 343 (W.D.N.Y. 2015), *aff'd*, 652 F. App'x 25 (2d Cir. 2016). Further, a medical opinion may be stale if it does not account for the plaintiff's deteriorating condition. *See Carney v. Berryhill*, No. 16-CV-269, 2017 WL 2021529, at *6 (W.D.N.Y. May 12, 2017). "However, a medical opinion is not necessarily stale simply based on its age." *Biro v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 464, 470 (W.D.N.Y. 2018). Remand is warranted where more recent evidence in the record "directly contradict[s] the older reports of [plaintiff's] functioning on which the ALJ relied" and the ALJ failed to fully analyze the more recent evidence. *Blash v. Comm'r of Soc. Sec. Admin.*, 813 F. App'x 642, 644 (2d Cir. 2020).

As outlined above, the ALJ considered all the medical evidence in the record, including subsequently admitted evidence of Plaintiff's allegations of pain, treatment notes, imaging, and activities. (T. 18-19.) Notably, Plaintiff neither demonstrated additional associated functional limitations that undermine the opinions at issue or identified any relevant evidence post-dating the opinions at issue that the ALJ failed to consider. *See Abate v. Comm'r of Soc. Sec.*, No. 1:18-CV-0266, 2020 WL 4597315, at *6 (W.D.N.Y. 2020). Therefore, the Court finds the ALJ did not err in relying, in part, on medical opinion evidence rendered in November and December of 2017.

Lastly, the Court finds Plaintiff's argument that in determining the RFC, the ALJ erroneously analyzed raw medical data and failed to sufficiently show support in the medical records for the RFC finding is also without merit. (Dkt. No. 15 at17-18.) Rather than substituting her own judgment, the ALJ's analysis indicates to the Court that the ALJ properly considered the opinion evidence together with the other evidence of record. (*See* T. 16-20.)

23

"There is a difference between analyzing medical records to determine what the weight of the evidence supports and interpreting raw medical data that would require the expertise of a physician or other trained medical source; the ALJ is precluded only from the latter." *Cristina M. v. Saul*, 3:18-CV-0332 (CFH), 2019 WL 3321891, at *6 (N.D.N.Y. July 24, 2019) (citing *Hanson v. Comm'r of Soc. Sec.*, 15-CV-0150 (GTS/WBC), 2016 WL 3960486, at *9 (N.D.N.Y. June 29, 2016), *report-recommendation adopted*, 2016 WL 3951150 (N.D.N.Y. July 20, 2016)).

In short, as discussed above, the ALJ considered the medical and other evidence in the record in making an RFC determination, provided a proper analysis of the evidence in the record, and provided sufficient analysis to permit the Court to meaningfully review the decision. Moreover, it is "Plaintiff's burden to prove a more restrictive RFC than the RFC assessed by the ALJ" and Plaintiff failed to do so. *Beaman v. Comm'r of Soc. Sec.*, No. 18-CV-1344, 2020 WL 473618, at *6 (W.D.N.Y. Jan. 28, 2020). As such, remand is not warranted.

Therefore, the Court recommends denying Plaintiff's motion on this ground.

### D.     Step Five Determination

Plaintiff has not raised any specific challenge to the ALJ's step five determination and is essentially a re-statement of his previous contentions that that the ALJ failed to develop the record and improperly determined the RFC. (*See* Dkt. No. 15 at 18-20.)

At step five, the burden shifts to the Commissioner "to show there is other work that [the claimant] can perform." *McIntyre*, 758 F.3d at 150 (quoting *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 445 (2d Cir. 2012)). "If a claimant has non-exertional limitations that 'significantly limit the range of work permitted by his exertional limitations,' the ALJ is required to consult with a vocational expert." *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (quoting *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986)).

If the ALJ utilizes a VE at the hearing, the VE is generally questioned using a hypothetical question incorporating the plaintiff's limitations. *See Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981). The ALJ may rely on a VE's testimony regarding the availability of work if the hypothetical facts the expert is asked to consider are based on substantial evidence and accurately reflect the plaintiff's limitations. *Calabrese v. Astrue*, 358 F. App'x 274, 276 (2d Cir. 2009). Where the hypothetical is based on an ALJ's RFC analysis which is supported by substantial facts, the hypothetical is proper. *Id*. at 276-77.

As set forth above, VE Vandergoot testified at the hearing. (T. 76-84.) Because this Court has found the ALJ fulfilled her duty to develop the record and substantial evidence supported the RFC, the Court also finds the ALJ's hypothetical to VE Vandergoot based upon that RFC was proper, and thus the ALJ's step five determination was supported by substantial evidence. (T. 21-22, 79-84.) As such, remand is not required.

Therefore, the Court recommends denying Plaintiff's motion on this ground.

## V.   CONCLUSION

Considering the foregoing, the Court finds the Commissioner's decision was based upon correct legal standards and substantial evidence supports the determination that Plaintiff was not under a disability within the meaning of the Social Security Act.

**WHEREFORE,** it is hereby

**RECOMMENDED**, that Plaintiff's motion for judgment on the pleadings (Dkt. No. 15) be **DENIED**; and it is further

**RECOMMENDED** that Defendant's motion for judgment on the pleadings (Dkt. No. 17) be **GRANTED**; and it is further

**RECOMMENDED** that Defendant's decision denying Plaintiff benefits be **AFFIRMED**, and it is further

**RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1) be **DISMISSED**; and it is further

**ORDERED** that the Clerk of the Court serve copies of this Report-Recommendation on the parties in accordance with the Local Rules.  Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**.

*Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.


Dated:  December 6, 2021
        Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge